## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

BENNIE A. COOPER, JR.,            )
                    Plaintiff,   )
v.                               )            Case No. CIV-06-881-C
                                 )
DALE CAGLE, *et al.*,            )
                    Defendants.  )

### SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff Bennie A. Cooper, Jr., an Oklahoma prisoner appearing *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his federal constitutional rights.  Pending before the Court are the following motions: (1) Defendant Ben Lehew's Motion for Summary Judgment [Doc. ##123-124]; (2) Defendant Dale Cagle's Motion for Summary Judgment [Doc. ##126, 131]; (3) Motion for Summary Judgment of Defendants Shawn Briley, William Hobbs and Andy Moon [Doc. #127, 130]; and (4) Motion for Summary Judgment of Defendants Shelly Bowles and Dennis Keller [Doc. ##128, 129].

For the reasons set forth below, it is recommended that Defendant Lehew's Motion for Summary Judgment be granted.  It is further recommended that Plaintiff's official capacity claims be dismissed for failure to state a claim upon which relief may be granted. Finally, it is recommended that summary judgment be denied as to Plaintiff's claims against the remaining Defendants in their individual capacities.

## I.    Factual Background / Procedural History

Plaintiff is currently incarcerated at the Davis Correctional Facility in Holdenville, Oklahoma.  *See* Notice of Change of Address [Doc. #153].  Plaintiff has been sentenced to

seven consecutive life sentences for convictions on various sex-related offenses pursuant to a Judgment and Sentence dated July 27, 2007, Case No. CF-2007-237, District Court of Comanche County, State of Oklahoma.  Plaintiff has also been sentenced to a term of fifty years' imprisonment for a conviction of assault and battery of a juror pursuant to a Judgment and Sentence dated May 1, 2007, Case No. CF-2006-204, District Court of Comanche County, State of Oklahoma.

Plaintiff's claims in this lawsuit arise out of his pretrial detention at the Comanche County Detention Center (CCDC) in Comanche County, Oklahoma, pending his trials for the convictions referenced above.  Plaintiff alleges that during the period of his pre-trial detention, on January 3, 2006, his cell was searched, contraband was allegedly found and, as a result, he was placed in administrative segregation.  At the time Plaintiff filed the original complaint in this action on August 21, 2006, he remained in administrative segregation at CCDC.

Plaintiff filed an Amended Complaint [Doc. #17] on November 1, 2006.  Defendants then filed motions to dismiss the Amended Complaint.  *See* Motions [Doc. ##54, 56,  66]. In a Report and Recommendation filed August 30, 2007 [Doc. #84], this Court recommended granting Defendants' motions, but further recommended that Plaintiff be granted leave to further amend the Complaint.  The District Court adopted the Report and Recommendation. *See* Order [Doc. #85].  Thereafter, on October 30, 2007, Plaintiff filed a Second Amended Complaint [Doc. #88].  In the Second Amended Complaint, Plaintiff alleges the Defendants

kept him continuously in administrative segregation at CCDC from January 3, 2006, through May 22, 2007.

## II.    Plaintiff's Claims

Plaintiff asserts two bases for relief in the Second Amended Complaint.  In Count I, Plaintiff alleges his federal due process rights were violated with respect to Plaintiff's placement and continuous detention in administrative segregation from January 3, 2006, through May 22, 2007.[1]  Plaintiff claims the Defendants never gave him notice of any disciplinary charges, initiated an investigation, or allowed him to present a defense regarding any alleged rules violations.  Plaintiff alleges that whenever he inquired about his rights, the Defendants threatened him and trumped up other unsupported claims and allegations to keep Plaintiff in administrative segregation.

In Count II of the Second Amended Complaint, Plaintiff alleges a violation of his due process rights, challenging the conditions of his confinement in administrative segregation. Plaintiff claims that for sixteen months he was allowed out of his cell only three times per week for fifteen-minute increments to either shower or use the telephone and that he was denied all outdoor exercise, fresh air and sunshine.  He also claims he was given improper portions of food and was denied all dayroom privileges, visitation with family and friends, commissary privileges, television privileges, and personal property.  Plaintiff claims that

---

[1]In Count I, Plaintiff also includes a passing reference to the Equal Protection Clause, but he does not make any factual allegations to support a violation of his equal protection rights or otherwise develop a claim based on the Equal Protection Clause.

after enduring these conditions for several months he lost weight and suffered from pain in his legs, muscle weakness, deterioration and spasms.  According to Plaintiff, he was seen by the medical staff on numerous occasions and received steroid and pain shots for these physical problems.  Plaintiff contends that Defendants were deliberately indifferent to his suffering and that his physical injuries "caused him great pain and both mental and emotional pain, anguish, and distress, to point of requesting mental health services."  *See* Second Amended Complaint at 7.

As relief, Plaintiff seeks nominal damages, compensatory damages, punitive damages and such other equitable relief as to which he may be entitled.

Plaintiff names as Defendants the administrator of the CCDC, Dale Cagle, and the former administrator, Ben Lehew.  Plaintiff also names as Defendants the following additional employees of the CCDC:  Andy Moon, Dennis Keller, William Hobbs, Shawn Briley, and Shelly Bowles.  Defendant Moon is identified as a Captain who served as Chief of Security at CCDC.  Defendants Keller, Hobbs, Briley and Bowles are identified as CCDC officers with responsibility for various shifts at the detention center.

As set forth more fully below, Defendant Lehew's employment at CCDC ended just twenty days after Plaintiff's placement in administrative segregation.  Defendant Lehew is represented by separate counsel and has filed a separate motion for summary judgment.  Because different factual circumstances surround Plaintiff's claims against Defendant Lehew, his motion for summary judgment is addressed separately.

4

The Court first addresses the three motions for summary judgment filed by the remaining Defendants, hereafter collectively referred to as the CCDC Defendants. The CCDC Defendants, though represented by the same counsel, do not jointly move for summary judgment. Nonetheless, the briefs submitted by the CCDC Defendants and the factual record they rely upon to support their summary judgment motions are virtually identical. For that reason, the Court addresses the CCDC Defendants' motions collectively.

## III.     Standard of Review on Motions for Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999).

When a Court-ordered *Martinez* report is part of the record, the report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). "The plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." *Id*.

5

## IV.   Qualified Immunity Standards on Summary Judgment

The CCDC Defendants have raised the defense of qualified immunity as to Plaintiff's claims for relief brought pursuant to § 1983 alleging violations of his federal constitutional rights.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" if the complained of behavior did not violate clearly established law.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an immunity from suit rather than a mere defense to liability and "is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell*, 472 U.S. at 526.

In *Scott v. Harris*, __ U.S.__, 127 S.Ct. 1769, 1774 (2007), the United States Supreme Court revisited the proper analysis to be undertaken once the defense of qualified immunity is raised:

> In resolving questions of qualified immunity, courts are required to resolve a "threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case."  *Ibid*. Although this ordering contradicts "[o]ur policy of avoiding unnecessary adjudication of constitutional issues," *United States v. Treasury Employees*, 513 U.S. 454, 478 (1995) (*citing Ashwander v. TVA*, 297 U.S. 388, 346-347 (1936) (Brandeis, J., concurring)), we have said that such a departure from practice is "necessary to set forth principles which will become the basis for a [future] holding that a right is clearly established."  *Saucier*, *supra*, at 201.

*Scott*, 127 S.Ct. at 1774.  When considering the defense of qualified immunity in the context of a summary judgment motion, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment]

6

motion,'" and "this usually means adopting . . . the plaintiff's version of the facts." *Id.* at 1774-1775.

With these standards in mind, the Court proceeds to review Plaintiff's claims to determine whether, taken in the light most favorable to Plaintiff, the facts alleged by him are sufficient to demonstrate that the Defendants' conduct violated Plaintiff's constitutional rights and, if so, whether those rights were clearly established.

## V.   The CCDC Defendants' Motions for Summary Judgment

### A.   Plaintiff's Due Process Claim Regarding Continued Administrative Segregation

#### (1)   Liberty Interest

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff's due process claim, therefore, can proceed only if he can establish that he had a protected liberty interest in avoiding continuous placement in administrative segregation.

"[A] liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)." *Wilkinson*, 545 U.S. at 222. Pursuant to *Sandin*, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language

of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"  *Wilkinson*, 545 U.S. at 223 (*quoting Sandin*, 515 U.S. at 484).  Placement in administrative segregation, therefore, may implicate a protected liberty interest if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, or if it inevitably increases the duration of the sentence imposed.  *Id*. at 487.[2]

The *Sandin* hardship inquiry requires "identifying the baseline from which to measure what is atypical and significant in any particular prison system."  *Wilkinson*, 545 U.S. at 223. Subsequent to *Wilkinson*, the Tenth Circuit has created a list of relevant factors to consider both in determining a proper baseline comparison and how significantly the conditions of confinement must deviate from that baseline to create a protected liberty interest.  *See Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1341-1342 (2007).  Those factors include (1) whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement; and (4) whether the placement is indeterminate.  *Id*.

---

[2]As the CCDC Defendants correctly state, and as *Sandin* and *Wilkinson* make clear, Plaintiff cannot demonstrate that a liberty interest exists based solely on the CCDC's policies and procedures. Moreover, the Defendants' failure to follow those procedures does not necessarily establish a violation of Plaintiff's due process rights.

### (a)      Purpose of the Continued Segregation

In moving for summary judgment, the CCDC Defendants submit that "Plaintiff's continued segregation was for the dual purposes of Plaintiff's safety and protection and for the safety and protection of other inmates and CCDC staff." *See* Cagle Brief [Doc. #131], Statement of Uncontroverted Facts, ¶ 4; Briley Brief [Doc. #130], Statement of Uncontroverted Facts, ¶ 5; Bowles Brief [Doc. #129], Statement of Uncontroverted Facts, ¶ 6. As the sole support for this statement of fact, the Defendants cite the court-ordered Special Report [Doc. #41] at pp. 2-3.

The Special Report states the following regarding the purpose of Plaintiff's continued confinement in administrative segregation:

> [On January 3, 2006] Plaintiff and his cell were searched. Officers retrieved a cigarette lighter from Plaintiff's mouth. Based on this finding, Plaintiff was immediately placed into Administrative Segregation. A more thorough search of the cell revealed two "shanks" located in the air vent above Plaintiff's bed. Due to this discovery, it was determined that Plaintiff should remain in Administrative Segregation for his and other safety, until the administrator determined to return Plaintiff to general population.
>
> The Plaintiff has not been returned to general population since the discovery of the "shanks" in his cell over his bed. On April 24, 2006, the Plaintiff during his trial on the above identified charges, assaulted one of the jurors, an elderly man, resulting in a mistrial. Charges were filed pursuant to 21 O.S. § 650. While housed in Administrative Segregation, Plaintiff has caused daily disturbances within the pod, by kicking his door, has been belligerent to jail staff, and threatened to kill jail staff. Plaintiff has had contraband discovered in his cell including razor blades and solvents which present serious safety issues.
>
> Dale Cagle reviews Plaintiff's housing in Administrative Segregation on a weekly basis. Based on safety concerns arising from Plaintiff's criminal charges, Plaintiff's unprovoked assault on a juror – apparently calculated to cause a mistrial, the discovery of two homemade knives or "shanks" within his cell, the repeated discovery of contraband in his possession, the continual

> disruption he causes in the pod, and his continual and frequent, belligerent and threatening behavior directed at Detention Center staff, Mr. Cagle has determined that it is in the best interest of the safety of the Plaintiff, other prisoners, and Detention Center Staff that Plaintiff remain in Administrative Segregation at this time.

*See* Special Report at 2-3.

Although the statement in the Special Report may identify legitimate penological purposes for Plaintiff's continued administrative segregation, the Defendants have failed to submit any competent evidence supporting the statement. The Special Report is submitted by Defendant Moon, but is not verified by Defendant Moon, nor did Defendant Moon submit any documentation or affidavits in support of the statements contained in the Special Report.

In *Hall v. Bellmon*, *supra*, the Tenth Circuit explained the proper (and limited) uses of the Special Report.[3]  The purpose of the Special Report "is to identify and clarify the issues the plaintiff raises in the complaint . . . and [to] aid[] the court in its broad reading of the pro se litigant's pleadings . . . by supplementing a plaintiff's often inadequate descriptions of the practices that he contends are unconstitutional." *Hall*, 935 F.2d at 1112.  For example, a Special Report may be used to describe a prison's challenged policies or procedures. *Id.* at 1113.  Although the Special Report may be "treated as an affidavit" for these purposes, it may not be used to "to resolve factual issues or to find that there are no disputed facts." *Id.*

---

[3]In *Hall*, the Court referred to the Special Report as a *Martinez* Report, referencing the case in which the use of such a report was first authorized. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Here, the statements in the Special Report do not satisfy the evidentiary requirements of Fed. R. Civ. P. 56(e).[4] The statements of Defendant Moon are not sworn, and the Special Report does not include affidavits based on personal knowledge of the reasons for Plaintiff's continued detention in Administrative Segregation. *Compare Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995) (information provided by prison officials in *Martinez* report did not warrant grant of summary judgment where statements of the administrative officer were not sworn and report did not include affidavits based on personal knowledge of challenged prison searches). Remarkably absent from any of Defendants' motions and from the Special Report is an affidavit from Defendant Dale Cagle, the Administrator of the CCDC. Pursuant to the CCDC's policies and procedures and the Special Report, Defendant Cagle is the jail official solely responsible for making the determination regarding Plaintiff's continued placement in administrative segregation.

Defendants' contention regarding the purpose of Plaintiff's continued administrative segregation, moreover, is controverted by Plaintiff. Plaintiff admits that he had contraband on his person (a cigarette lighter) when prison officials searched him on January 3, 2006. *See* Lehew Brief [Doc. #124], Attachment B, Deposition Testimony of Plaintiff at 136, 137-138; *see also* Plaintiff's Response [Doc. #148], Exhibit 2, Declaration of Bennie A. Cooper, Jr. ("Plaintiff's Declaration") at 2, ¶ 7. Plaintiff, therefore, does not argue that his initial

---

[4]In pertinent part, Rule 56(e) requires an affidavit to be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed.R.Civ.P. 56(3).

placement was without a legitimate penological purpose.  But Plaintiff denies knowledge of the shanks found in his cell after he had been removed from the cell and placed in administrative segregation.  *See* Plaintiff's Declaration at 2-3, ¶ 9.  Plaintiff states prison officials told him he was being placed in administrative segregation as a result of his possession of the contraband, a rules violation.  Plaintiff, however, claims he was not provided notice of any charges against him, a disciplinary hearing or the right to appeal any adverse determination at such a hearing.  And indeed, the record before the Court fails to disclose that disciplinary charges were ever initiated against Plaintiff or even that an investigation was undertaken.  Nonetheless, Plaintiff remained in administrative segregation from January 3, 2006, through May 22, 2007.  Plaintiff claims he was never provided any reasons for his continued placement in administrative segregation

In replying to Plaintiff's response to Defendants' motions, Defendants submit a judgment and sentence of conviction against Plaintiff dated May 1, 2007, for charges of assault and battery of a juror.  *See* Defendants' Reply [Doc. #152], Exhibit 1.  According to the record, the incident occurred on February 9, 2006.  *See* Defendant Lehew's Brief at 3, ¶ 14, *citing* Attachment B, Plaintiff's Deposition Testimony at 147, lines 2-9.[5] Defendants, however, have failed to submit any evidence, either by verified affidavit or documents, to demonstrate that Defendant Cagle decided to continue Plaintiff's administrative segregation

---

[5]The Special Report identifies the date of the juror assault as April 24, 2006.  *See* Special Report at 2-3.  However, no evidence is cited in support of that date.  Because Plaintiff's deposition testimony identifies the date of the assault as February 9, 2006, the Court has relied upon that date.

based on the incident of the juror assault.  Moreover, the assault and battery occurred approximately one month after Plaintiff was placed in administrative segregation, yet he remained in administrative segregation for well over one year after the assault and battery. Whether the assault and battery justified Plaintiff's continued administrative segregation for that length of time is not discernible from the present record before the Court.

Defendants also assert that Plaintiff's placement in administrative segregation was for his own protection, referencing the fact that Plaintiff was being detained at CCDC on charges for sex-related offenses.  According to the Special Report, Plaintiff served a period of time in protective custody upon his arrival at the CCDC.  However, he was later released to the general prison population on July 21, 2004, and remained there for a period of approximately one and one-half years before the January 3, 2006, search of his cell which resulted in his placement in administrative segregation.  *See* Special Report at 2.  A reasonable inference from this information, viewed in the light most favorable to Plaintiff, is that Plaintiff was not in need of protective custody during the period of his administrative segregation from January 3, 2006 through May 22, 2007.  Defendants have not provided competent evidence to support any other inference.

Viewing the facts supported by competent evidence and drawing reasonable inferences from those facts in the light most favorable to Plaintiff, Plaintiff's factual allegations are sufficient to raise genuine issues of material fact relating to whether his continued placement in administrative segregation for sixteen months was for a legitimate penological purpose.

### (b)    Conditions of Confinement

Plaintiff alleges that during his sixteen months in administrative segregation, he was in virtually continuous lock-down status spent in solitary isolation.  Plaintiff states he was only allowed out of his cell for a fifteen-minute interval three times per week for purposes of either showering or using the telephone.  The only other times inmates in administrative segregation are allowed out of their cells is for medical purposes or to visit an attorney.[6]  Plaintiff states that he was never allowed to exercise outside of his cell.  He further states that he was never allowed outdoor recreation, sunlight or fresh air during the period of his administrative segregation.  In addition, Plaintiff alleges he was denied all dayroom privileges, visitation with family and friends, commissary privileges, television privileges, personal property, daytime use of the telephone during regular business hours, and contact with attorneys and legal assistants. Plaintiff's allegations are set forth both in the Second Amended Complaint, which he has verified, and in his sworn declaration submitted in response to Defendants' motions for summary judgment.  *See* Second Amended Complaint at 6; Plaintiff's Response [Doc. #148], Exhibit 2, Plaintiff's Declaration.  In addition, Plaintiff has attached the sworn declaration of Derrick Godwin, a prisoner also housed in administrative segregation at the CCDC from February 2007 through June 2007, which further supports his allegations.  *See* Plaintiff's Response [Doc. #149], Exhibit 4, Sworn Declaration of Derrick D. Godwin.

---

[6]Plaintiff does not state whether he was allowed out of his cell for either of these reasons.

14

The Tenth Circuit Court of Appeals has recognized the validity of an Eighth Amendment claim based on denial of outdoor exercise stating:

> There is substantial agreement among the cases in this area that some form of regular *outdoor* exercise is extremely important to the psychological and physical well being of inmates, and some courts have held a denial of *fresh air and exercise* to be cruel and unusual punishment under certain circumstances.

*Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (emphasis added).  *See also Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir.) (finding that "district court erred as a matter of law in concluding that a prisoner must allege denial of all exercise, not just outdoor exercise, to present an 'arguable" claim"), *cert. denied*, 127 S.Ct. 675 (2006).  Even where special security concerns may be at issue based on an inmate's violent propensities, the complete denial of outdoor exercise presents a viable claim.  As the Tenth Circuit observed in *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994), under its precedent "even a convicted murderer who had murdered another inmate and represented a major security risk was entitled to outdoor exercise."  *Id*. 41 F.3d at 599 (*citing Bailey v. Shillinger*, 828 F.2d 651 (10th Cir. 1983)).  And, even where the inmate can perform some in-cell exercise, a valid Eighth Amendment claim exists.  *See Fogle*, 435 F.3d at 1260.

The CCDC Defendants, again relying on the unverified statements in the Special Report, state that Plaintiff has been permitted to have outside exercise.  *See* Cagle Brief, Statement of Uncontroverted Facts, ¶¶ 16-17; Briley Brief, Statement of Uncontroverted Facts, ¶¶ 17-18; Bowles Brief, Statement of Uncontroverted Facts, ¶¶ 18-19.  The portion of the Special Report relied upon by the CCDC Defendants states as follows:

> Inmates, such as Plaintiff, in Administrative Segregation with charges that present risks of assault from other inmates, present special problems due to their length of time spent in segregation.  These inmates are permitted access to outside exercise, and Plaintiff has actually been permitted to have outside exercise.  However, in these instances he has assaulted and threatened officers supervising him.  The primary obstacle to Plaintiff for an opportunity for outdoor exercise is his continual and daily belligerence and threats to staff, and his contraband violations which create security and safety concerns.

*See* Special Report at 5.  The statements in the Special Report are not verified or otherwise supported by competent and admissible evidence.[7]  Moreover, in responding to Defendants' motions, Plaintiff has attached discovery responses by various Defendants that support his claim that outdoor exercise was denied to inmates placed in administrative segregation.  *See* Plaintiff's Response [Doc. #149], Exhibit 9, Defendant Shelly Bowles' Answers to Plaintiff's First Set of Interrogatories, Interrogatory No. 8 and Response; *id.*, Exhibit 10, Defendant William Hobbs' Answers to Plaintiff's First Set of Interrogatories, Interrogatory No. 6 and Response.  These responses are verified by the respective Defendants.

Plaintiff also alleges he was denied commissary privileges, visitation rights and other privileges as further evidence that his detention in administrative segregation was atypical and significant in relation to the ordinary incidents of prison life.  Defendants have not

---

[7]The Court notes that Defendant Lehew's declaration states that Plaintiff was allowed out of his cell to exercise in the dayroom for one hour, three times per week.  *See* Lehew Brief [Doc. #124], Attachment A, Lehew Declaration, ¶ 3.  The CCDC Defendants do not rely upon this statement in moving for summary judgment.  Even if they did, this statement would not resolve disputed issues of material fact as to whether Plaintiff was allowed exercise any time after January 23, 2006, when Lehew ended his employment as CCDC Administrator.  Because Defendant Lehew's employment with the CCDC ended twenty days after Plaintiff's initial placement in administrative segregation, the statement has little or no probative value for determining the conditions of Plaintiff's continued detention in administrative segregation thereafter.

established with competent evidence that as a matter of undisputed fact, Plaintiff's allegations are unsupported.  For example, Defendants state that Plaintiff had commissary privileges but could not use them because he had a negative account balance. *See, e.g.,* Cagle Brief, Statement of Uncontroverted Facts, ¶ 10 ("While in Administrative Segregation, inmates can make purchases from the commissary; however, Plaintiff maintained a negative balance in his commissary account."). Defendant Cagle cites unverified statements in the Special Report and Plaintiff's deposition testimony in support of this statement.  A careful reading of that deposition testimony, however, shows only that Plaintiff did not know he had a negative account balance.[8]  Moreover, the CCDC policy and procedure manual expressly states that inmates in administrative segregation will not be allowed commissary privileges. *See* Cagle Brief, Exhibit 2, CCDC Policy and Procedure, Administrative Segregation at 4, ¶ 11 ("Commissary privileges are **not** afforded to inmates assigned to Administrative segregation to include protective custody inmates.") (emphasis in original); Briley Brief, Exhibit 2 (same); Bowles Brief, Exhibit 2 (same).

---

[8]The deposition testimony states:

Q. Is it your understanding that your commissary account was negative when you left Comanche County?
A. There was no reason to put money on those books.
Q. You were like $300 in the hole when you left; right?
A. I don't have a clue.  Did they say I was in the hole to them?
Q. You don't know?
A. No.  What was it?  For legal – for something?  I don't have a clue.  I didn't know I was in the hole to them.

*See* Cagle Brief, Exhibit 1, Plaintiff's Deposition Testimony at 116-117; Briley Brief , Exhibit 1 (same); Bowles Brief, Exhibit 1 (same).

17

With respect to visitation rights, the CCDC policy and procedure manual provides that prisoners confined in administrative segregation have restricted visitation rights.  *See, e.g.,* Cagle Brief, Exhibit 2, CCDC Policy and Procedure, Administrative Segregation at 4, ¶ 13 ("Inmates who are assigned to Administrative segregation are not in the regular visitation rotation. . . . Since this unit is considered to be punitive in nature, visits are not normally allowed except in extreme circumstances. . . .").  Defendants contend the detention center received only one visitation request from Plaintiff, relying upon the unverified statements in the Special Report.  *See* Cagle Brief, Statement of Uncontroverted Facts, ¶¶ 8-9; Briley Brief, Statement of Uncontroverted Facts, ¶¶ 9-10; Bowles Brief, Statement of Uncontroverted Facts, ¶¶ 10-11.  Plaintiff, conversely, states that he was continually told he could not have any visitors and attaches the affidavit of a family member stating that prison officials told her Plaintiff was not allowed visitors.  *See* Plaintiff's Response [Doc. #148], Exhibit 5.

Based on the record before the Court, and viewing the facts in the light most favorable to Plaintiff, Plaintiff has alleged facts sufficient to show that the conditions of his administrative segregation were extreme.

### (c)      Duration of Confinement

A third factor to address is whether the placement in administrative segregation increased the duration of Plaintiff's confinement.  *DiMarco*, 473 F.3d at 1342.  Defendants submit as an undisputed fact that "Plaintiff's placement in Administrative Segregation did not increase the duration of Plaintiff's confinement."  *See* Cagle Brief, Statement of Uncontroverted Facts, ¶ 19; Briley Brief, Statement of Uncontroverted Facts, ¶ 21; Bowles

Brief, Statement of Uncontroverted Facts, ¶ 22.   In support of this fact, the CCDC

Defendants rely upon the Sworn Declaration of Ben Lehew.   Defendant Lehew states the

following:

> For each day Cooper was incarcerated in the CCDC prior to conviction, he received one day's credit towards his sentence upon conviction.   While Cooper was incarcerated in the CCDC, he did not lose any credit for any jail time he served in the CCDC, regardless of whether he was housed in general population or in segregation.

See Lehew Brief [Doc. #124], Attachment A, Sworn Declaration of Ben Lehew, ¶ 6.

Noteworthy, however, is the fact that Defendant Lehew's employment at CCDC ended on

January 23, 2006, approximately twenty days after Plaintiff's initial placement in

administrative segregation and long before any judgment of conviction had been entered

against Plaintiff.   See id., ¶ 1.[9]   Defendant Lehew, therefore, has not established that he has

personal knowledge as to whether Plaintiff received credit toward his sentences upon

conviction.

In responding to Defendants' motions for summary judgment, Plaintiff states:

> Plaintiff's placement in Ad-Seg. did increase the duration of Plaintiff's confinement because his alleged bad conduct was reported to the Plaintiff's assigned Judges, District Attorney, and Department of Corrections, and Plaintiff was not given credit for jail time already served prior to conviction, or allowed certain good-time credits awarded by the Department of Corrections after transfer from the CCDC to the Department of Corrections.

---

[9]The Judgment and Sentence in Case No. CF-2004-237, District Court of Comanche County, State of Oklahoma for Plaintiff's sex-related offenses was entered on July 27, 2007.   See Plaintiff's Response, Exhibit 14.   The Judgment and Sentence in Case No. CF-2006-204, District Court of Comanche County, State of Oklahoma for Plaintiff's assault and battery of a juror was entered on May 1, 2007.   See Defendants' Reply, Exhibit 1.

*See* Plaintiff's Response [Doc. #149] at 8-9.   In support, Plaintiff submits his sworn declaration.  *See id.*, Attachment 2, Plaintiff's Declaration, ¶ 13.  Defendants have submitted with their reply brief, the Judgment and Sentence, Case No. CF-2006-204, District Court of Comanche County, State of Oklahoma for Plaintiff's conviction on charges of assault and battery of a juror.  *See* Reply [Doc. #152], Exhibit 1.  The Judgment and Sentence provides that "Defendant is to receive credit for time served."  *See id*.  This evidence reflects only that the state trial court ordered Plaintiff to receive credit for time served.  It does not reflect, as a matter of sentencing administration, that the Oklahoma Department of Corrections in fact credited Plaintiff's sentence with time served. Moreover, Plaintiff was incarcerated for over one and one-half years at CCDC before he committed the assault on the juror and this time would not be properly credited to the judgment and sentence on that conviction.  In their Reply, Defendants further state that Plaintiff "fails to explain how he could be given credit for time served on [seven consecutive life sentences]."  *See* Reply at 7.   However, Defendants submit this statement without analysis or citation to legal authority.  Based on the present record before the Court, neither party has submitted reliable evidence demonstrating that Plaintiff's placement in administrative segregation lengthened the duration of his confinement.  This factor, therefore, does not weigh in favor of either Plaintiff or the CCDC Defendants.

**(d)    Indeterminate Confinement**

The final factor under consideration is whether Plaintiff's placement in administrative segregation was indeterminate.  It appears undisputed on the record before the Court that Plaintiff was not assigned a specific number of days in disciplinary detention.  He remained in segregation from the date of the cell search, January 3, 2006, through the date he was transferred to another facility, May 22, 2007.  Plaintiff claims that contrary to the CCDC's policy and his due process rights, he did not receive any periodic review of his continued detention in administrative segregation, but instead remained there for an indeterminate amount of time.

According to the CCDC policy, inmates who remain in administrative segregation beyond seven continuous days "will be reviewed on the record each week and formally reviewed at least every thirty days."  *See* Cagle Brief, Exhibit 2, CCDC Policy and Procedure, Administrative Segregation at 6.[10]  In addition, inmates are "given the opportunity [to] submit a Request to Staff to the Administrator at any time during their placement in Administrative segregation" and copies of all such requests are to be placed in the inmate's facility file.  *Id.*

---

[10]The CCDC Policy and Procedure further provides:

No inmate will be underlined confined in Administrative Segregation continuously for more than thirty days without the Administrator's approval.

*See* Defendant Cagle's Brief, Exhibit 2, CCDC Policy and Procedure, Administrative Segregation at 1-2 (emphasis in original); Briley Brief, Exhibit 2 (same); Bowles Brief, Exhibit 2 (same).

The Special Report states that Defendant Cagle made the determination to keep Plaintiff in administrative segregation.  However, as previously noted, Defendant Cagle has not provided an affidavit or other documents demonstrating his reasons for doing so or that he made periodic reviews of Plaintiff's placement in administrative segregation. *Compare DiMarco*, 473 F.3d at 1333-1334 (finding prisoner's confinement as not indefinite where prisoner had regular reevaluations throughout her confinement in administrative segregation, was interviewed as part of the review, was not isolated from prison staff nor denied the opportunity to object to the conditions of her confinement).

Plaintiff attached to his First Amended Complaint a Request to Staff he submitted on May  29, 2006, addressed to the Administrator, Defendant Dale Cagle.  *See* Amended Complaint [Doc. #17], Exhibit 1-B.  In that Request, Plaintiff states that he has been in administrative segregation since January 3, 2006, without any due process, and requests his release to the general population.  Even though this request was addressed to Defendant Cagle, as was proper pursuant to the CCDC's policies and procedures, Defendant Moon responded to the request and denied it.  Defendant Moon advised Plaintiff that "due to past behavior" he would remain in administrative segregation and his placement would be reviewed every 30 days.  Plaintiff then submitted a grievance on June 18, 2006, stating that he disagreed with Defendant Moon's response to the request to staff and specifically, that Defendant Moon did not address Plaintiff's due process concerns.  *See id.*, Exhibit 1-C. Defendant Moon again denied the grievance.  *See id.*  Defendants have submitted no

competent evidence establishing that Defendant Cagle was involved in the decision to continue Plaintiff in administrative segregation.[11]

The Special Report states that Plaintiff submitted over 150 Requests to Staff. However, Defendants have not submitted even one of these Requests to Staff in moving for summary judgment.   Moreover, the Special Report fails to identify to whom these requests were submitted or when they were submitted or what responses were provided.[12]   The present record before the Court, therefore, contains only the request to staff and grievance provided by Plaintiff with his initial Complaint.   Those documents, viewed in the light most favorable to the Plaintiff, indicate Plaintiff was not provided the opportunity to challenge his placement in administrative segregation, was denied access to Defendant Cagle and was prevented from being heard on the conditions of his confinement.   Given this record and Plaintiff's uncontroverted allegations that he never received notice of the charges against him, notice of additional infractions while in administrative segregation, or any form of disciplinary charges, Plaintiff has alleged facts sufficient to demonstrate his detention in administrative segregation was indeterminate.

---

[11]In the original complaint, Plaintiff expressly alleges that Defendant Moon "blocked access to the Administrator's review," *see* Complaint at 2 and that Defendants "completely disregarded his grivances."   *Id*. at 6; *see also* Amended Complaint at 7, 11.

[12]The Request to Staff Plaintiff attached to the First Amended Complaint and submitted before Plaintiff instituted this action states that Plaintiff had not previously submitted a request to staff on this issue.

In sum, considering the four factors in the context of the evidentiary record before this Court, Plaintiff has presented facts sufficient to demonstrate that his confinement in administrative segregation implicated a liberty interest.

### (2)     **Adequacy of Due Process Protections**

Even where a plaintiff has alleged facts sufficient to demonstrate a protected liberty interest, further inquiry is required to determine whether a due process violation has occurred.  In *Wilkinson*, the Supreme Court held that where an inmate challenges a placement decision, due process is satisfied if prison officials allow: "(1) a sufficient initial level of process; i.e., a reasoned examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to the decision; and (3) safety and security concerns to be weighed as part of the placement decision." *DiMarco*, 473 F.3d at 1344 (*citing Wilkinson*, 545 U.S. at 226-227).  If the placement implicates the safety of prison staff and other inmates, then informal, nonadversary procedures that allow notice and an opportunity to be heard are sufficient.  *DiMarco*, 473 F.3d at 1344 (*citing Wilkinson*, 545 U.S. at 228-229).

As previously noted, Plaintiff admits that he was in possession of the cigarette lighter and that his initial placement in administrative detention was based on that circumstance. However, according to the CCDC Defendants the reasons for Plaintiff's placement in administrative segregation went beyond Plaintiff's possession of a cigarette lighter.  Plaintiff did not receive notice of those reasons.  In addition, as analyzed above, the record is void of any explanation, supported by evidence, as to the reasons for his continued detention in administrative segregation for sixteen months.  And, there is no evidence that Plaintiff was

given any opportunity to be heard.  Moreover, the present evidentiary record does not demonstrate that Plaintiff was provided any periodic and meaningful reviews of his continued detention in administrative segregation.  Under these circumstances, Plaintiff has presented facts sufficient to demonstrate a violation of his due process rights.

**(3)**     **Clearly Established Rights**

When, as here, a plaintiff has alleged facts sufficient to establish the violation of a federal constitutional right, the next step in the qualified immunity analysis requires the Court to determine whether the "infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable [prison official] would have known that his or her challenged conduct was illegal." *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) (*citing Saucier v. Katz*, 533 U.S. at 201).

In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts must establish that the law is as plaintiff maintains.  *Id.* (citations omitted).  "Although the very action in question does not have to have previously been held unlawful, in the light of pre-existing law the unlawfulness must be apparent." *Albright v. Rodriguez*, 51 F.3d 1531 (10th Cir. 1995) (citation and internal quotations omitted).  Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  The salient question is whether the state of the law at the time gave officials "fair warning" that their conduct violated federal constitutional, or in this case statutory, rights.  *See id.*

25

Clearly established Supreme Court precedent as set forth in *Sandin v. Conner*, 515 U.S. 472 (1995) and *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005), gave the CCDC Defendants fair warning that their conduct, as alleged by Plaintiff, violated clearly established federal law.  *Sandin* provides clearly established law that a prisoner's due process rights may be violated if placement in administrative segregation results in [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Moreover, in *Wilkinson* the Supreme Court clarified the scope of process due where placement in administrative segregation implicates a liberty interest.  Both *Sandin* and *Wilkinson* were decided well before Plaintiff's placement in administrative segregation.  This Supreme Court precedent gave prison officials fair warning that the complete denial of due process and the indeterminate placement of Plaintiff in administrative segregation could give rise to a violation of his constitutional rights.  Moreover, specific application of the principles set forth in *Sandin and Wilkinson* were addressed by the Tenth Circuit Court of Appeals in *DiMarco*, a case decided during the pendency of Plaintiff's placement in administrative segregation and prior to Plaintiff initiating this lawsuit.  Under these circumstances, the law was clearly established and the CCDC Defendants had fair warning that the wrongful conduct as alleged by Plaintiff violated his federal constitutional rights.

The CCDC Defendants, therefore, are not entitled to qualified immunity with respect to the claim raised in Count I of the Second Amended Complaint.  Viewing the evidence in the light most favorable to Plaintiff, he has alleged facts sufficient to demonstrate that his placement in administrative segregation implicated a protected liberty interest and further,

that he was denied due process of law in deprivation of that liberty interest.  The law governing Plaintiff's due process claim was clearly established at the time the alleged incidents occurred.  Accordingly, the CCDC Defendants are not entitled to qualified immunity.  Moreover, disputed issues of fact exist as to whether Plaintiff's constitutional rights were violated.   Accordingly, the CCDC Defendants are not entitled to summary judgment as to the claim raised in Count I of the Second Amended Complaint.

### B.   Plaintiff's Claim of Unconstitutional Conditions of Confinement

Plaintiff was a pretrial detainee at the time his claims arose.  "Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Elberly*, 164 F.3d 490, 495 (10th Cir.1998) (citation omitted); *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, [and] this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.") (quotation omitted).

"The test for a 'deliberate indifference' claim under the Eighth Amendment has both an objective and a subjective component." *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (quotation omitted), *overruled on other grds., Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).  In order to satisfy the objective component, Plaintiff must show that he suffered harm "sufficiently serious to implicate the Cruel and Unusual Punishment Clause."  *Id*. (quotation omitted). To satisfy the subjective component, Plaintiff must

establish that Defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety." *Id*. (quotation omitted).

Under the objective "sufficiently serious" component, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation omitted). Plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm" to his health or safety. *Id*. The purpose of the "sufficiently serious" requirement "is to limit claims to significant, as opposed to trivial, suffering. Consequently, we look to the alleged injury claimed by the prisoner, and ask whether that harm is sufficiently serious." *Kikumura*, 461 F.3d at 1292 (quotations and citation omitted). Under this objective prong, the court examines the harm identified by the prisoner to determine if it was sufficiently serious, without regard to causation or the subjective prong. *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). The subjective prong of the deliberate indifference test requires Plaintiff to present evidence of the prison official's culpable state of mind. The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 751 (quotation, citation, and alteration omitted).

The CCDC Defendants move for summary judgment as to the claim raised in Count II of the Second Amended Complaint only with respect to Plaintiff's challenge to the complete denial of outdoor exercise throughout the period of his confinement in

administrative segregation.[13] As set forth in the analysis of Plaintiff's first claim for relief, Plaintiff has alleged facts sufficient to demonstrate a violation of his due process rights for unconstitutional conditions of confinement.  *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 810 (10th Cir. 1999) (prisoner stated valid Eighth Amendment claim where he alleged he was denied all outdoor exercise for over a year as such deprivation constituted a substantial risk of harm and prison officials knew of this substantial risk where they renewed the restrictions on a weekly basis); *Housley v. Dodson*, 41 F.3d at 599 (inmate who alleged he received only thirty minutes of out-of-cell exercise in three months stated Eighth Amendment claim).  Defendants have failed to demonstrate by undisputed facts that they are entitled to summary judgment on this issue.  Indeed, as previously discussed, the only evidence submitted by Defendants to challenge Plaintiff's allegations regarding a denial of outdoor exercise is the unverified statements in the Special Report.

In sum, Plaintiff has alleged facts sufficient to support a claim of unconstitutional conditions of confinement due to his indeterminate lock-down status and denial of out-of-cell and outdoor exercise while in administrative segregation for sixteen continuous months.  As

---

[13]The CCDC Defendants state that Plaintiff testified during his deposition that he is not asserting a claim against them for deprivation of food.  *See* Cagle Brief at 22; Briley Brief at 23; Bowles Brief at 23.  In making this assertion, the CCDC Defendants mischaracterize Plaintiff's deposition testimony.  Plaintiff testified that he was not claiming in this lawsuit that he got sick because he was not fed enough.  But he further testified that he was not receiving proper quantities of food in administrative segregation and that his physical injury resulted from a combination of "not receiving the proper amount of calories and nutrients and vitamins" and "not getting the proper exercise and sunshine and fresh air."  *See* Bowles Brief, Exhibit 1, Deposition Testimony of Plaintiff at pp. 54-55.  Because the CCDC Defendants do not provide any other basis for challenging Plaintiff's claim regarding the food portions provided to him in administrative segregation, that claim need not be further addressed by the Court in ruling on the CCDC Defendants' Motions.

the Tenth Circuit precedent cited herein demonstrates, that such deprivations violate a prisoner's constitutional rights was clearly established at the time of Defendants' alleged wrongful conduct.  Defendants, therefore, are not entitled to qualified immunity.  Moreover, disputed issues of material fact preclude the entry of judgment as a matter of law in favor of the CCDC Defendants as to the claim raised in Count II of the Second Amended Complaint.

### C.   **Personal Participation by the CCDC Defendants**

With the exception of Defendant Cagle, the remaining CCDC Defendants claim that Plaintiff has failed to allege facts demonstrating that they personally participated in the alleged violation of Plaintiff's constitutional rights.   Although Defendants include this argument under a proposition headed: "Plaintiff Has Failed to State a Claim Against Defendants," Defendants rely on matters outside the pleadings and request the Court to grant summary judgment in their favor.

"In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) (*citing Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993) (affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"); *Coleman v. Turpen*, 697 F.2d 1341, 1346 n. 7 (10th Cir.1982) (noting defendants cannot be liable under § 1983 unless personally involved in the deprivation)).

Defendants rely on two "uncontroverted facts" in support of this argument.  First, Defendants rely on the fact that Defendant Lehew "made the initial order to place [Plaintiff]

30

into Administrative Segregation on January 3, 2006." *See* Briley Brief at 11; Bowles Brief at 11. Second, according to Defendants, "in such a scenario, [they] would have no authority to release Plaintiff from Administrative Segregation." *Id*.

It is undisputed that Defendant Lehew remained employed at CCDC for only the first twenty days of Plaintiff's detention in administrative segregation. Therefore, Defendant Lehew's initial placement decision has no bearing on Plaintiff's continued and indeterminate detention in administrative segregation thereafter. Moreover, Plaintiff's due process claim in Count I of the Second Amended Complaint is based on facts beyond Lehew's initial orders to place him in administrative segregation. As Plaintiff indicates in deposition testimony, the CCDC Defendants failed to initiate any disciplinary proceedings against him and failed to take appropriate measures over the duration of his segregation to address the conditions of his confinement. Even if the CCDC Defendants did not have authority to release Plaintiff from administrative segregation, they could have notified the officials in charge that Plaintiff's constitutional rights were being violated. *See* Bowles Brief, Exhibit 1, Deposition Testimony of Plaintiff at pp. 90-93.

With respect to Plaintiff's conditions of confinement claim in Count II of the Second Amended Complaint, the CCDC Defendants claim "the decision regarding whether an inmate in Administrative Segregation is allowed to have outdoor exercise belonged to the Administrator alone." *See* Briley Brief at 11; Bowles Brief at 11. Defendants rely upon the CCDC's policies governing administrative segregation which state:

31

> Inmates assigned to this unit will be afforded the opportunity to exit their cell one (1) hour per day for the purpose of showers, phone calls, exercise, etc. Inmates who are deemed a security threat or who pose a risk to themselves or staff may not be afforded this one hour per day. When possible, the inmate will be allowed the one (1) hour exercise on the exercise yard if the security risk allows. Inmates assigned to this unit will not be given access to the exercise unit after dark and will not be allowed to exercise with any other inmate on the yard, the exercise will be solitary. The decision to not allow an inmate the one (1) hour per day exercise will be the Administrator's only.

*See* Briley Brief, Exhibit 2, CCDC Policy and Procedure, Administrative Segregation at 4, ¶ 9; *see also* Bowles Brief, Exhibit 2 (same). Defendants have not submitted any evidence to demonstrate that the Administrator, Defendant Cagle, ever made the decision to either permit or deny Plaintiff daily outdoor exercise and, if so, how often and under what circumstances he made that decision. Moreover, regardless of the Administrator's actions, to the extent Defendants knew of and disregarded the substantial risk of serious harm Plaintiff faced in continued lock-down status, they violated Plaintiff's constitutional rights regardless of the policy and procedure manual vesting the decision-making authority in the Administrator. *Compare Garrett v. Stratman*, 254 F.3d 946, 954-955 (10th Cir. 2001) (even though physician at prison did not have control over approval of prisoner's transfer to medical center for surgery, prisoner who waited nearly eleven months for transfer alleged sufficient personal participation by physician who could have done something to speed up the transfer process).

Plaintiff has alleged facts sufficient to demonstrate the CCDC Defendants' personal participation in the violation of his constitutional rights. The evidence relied upon by Defendants does not establish as a matter of law that they did not personally participate in

the alleged violations of Plaintiff's constitutional rights. Accordingly, the CCDC Defendants are not entitled to summary judgment on this ground.

### D.    Claims Against Defendants In Their Official Capacities

In the Second Amended Complaint, Plaintiff has sued Defendants in both their individual and official capacities. Plaintiff's official capacity claims against Defendants are in reality claims against Comanche County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ( a suit against an officer in his official capacity is in essence a suit against the entity that officer represents); *see also Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) (stating that a suit against the sheriff in his official capacity was "the equivalent of a suit" against the county (citation omitted)). The county cannot be held liable based solely on its employment of someone who has committed a constitutional violation. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). ("The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." (citation omitted)). In order for Plaintiff to state a claim against Comanche County, Plaintiff must show that the alleged wrongdoing has resulted from a county policy or custom. *See Winters v. Board of County Commissioners*, 4 F.3d 848, 855 (10th Cir. 1993) ("[I]n order for the County . . . to be held liable under § 1983 the constitutional violation must be a result of a government custom or policy" (citation omitted)). "When a policy is not unconstitutional in itself, the county cannot be held liable solely on a showing of a single incident of unconstitutional activity." *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) (citation omitted).

33

In the Second Amended Complaint, Plaintiff has not attributed the alleged violations of his constitutional rights to a custom or policy on the part of the county.  Consequently, Plaintiff has failed to state a valid claim against Defendants in their official capacities and these claims should be dismissed for failure to state a claim upon which relief may be granted.[14]

## VI.   Defendant Lehew's Motion for Summary Judgment

An evidentiary record distinct from that submitted by the CCDC Defendants requires that Defendant Lehew's Motion for Summary Judgment be addressed separately.  As previously noted, it is undisputed that Defendant Lehew was employed at the CCDC as Administrator from approximately April 2003 through January 23, 2006.  *See* Lehew Motion, Exhibit A, Sworn Declaration of Ben Lehew, ¶ 1. It is also undisputed that Plaintiff challenges his continuous placement in administrative segregation from January 3, 2006 through May 22, 2007.

Assuming Defendant Lehew personally participated in the decision to place Plaintiff in administrative segregation, he could only have engaged in such personal participation

---

[14]The CCDC Defendants contend that Plaintiff's official capacity claims must fail because they have "no final policy making authority with regard to the CCDC." *See, e.g.,* Briley Brief at 13. According to Defendants, Comanche County has created a public trust and the public trust has exclusive operation, management and control of the CCDC.  Defendants claim that because they have no final policy-making authority they have no "official capacity" and instead, that authority exists solely in the trust.   Defendants misapprehend the nature of official capacity claims and present a circuitous argument.  Nevertheless, the Court need not decide whether, as a matter of state law, the County or the trust is the entity with policy making authority for the operation, management and control of the CCDC.  As set forth above, Plaintiff has not attributed the alleged violations of his constitutional rights to a government custom or policy and, therefore, the official capacity claims fail to state a claim upon which relief may be granted.

through the end of his employment at CCDC.  As set forth in Defendant Lehew's motion for summary judgment, "Plaintiff had no contact with Defendant Lehew after Lehew's employment with the County ended around January 23, 2006."  *See* Lehew Motion at 3, ¶ 13 *citing* Attachment B, Plaintiff's Deposition testimony, Vol. I at 134, 138-139.  Therefore, Defendant Lehew's personal participation in the alleged violation of Plaintiff's constitutional rights could not have exceeded a period of twenty days.[15]

Given the limited time period of Defendant Lehew's personal participation, the Court finds as a matter of law that Defendant Lehew did not violate Plaintiff's constitutional rights. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.").  With respect to the claim raised in Count I, Plaintiff cannot establish a liberty interest arose in his right to be free from administrative segregation during the twenty-day period at issue.  As set forth above, Plaintiff's initial placement in administrative segregation was for a legitimate penological purpose as Plaintiff admits contraband (a cigarette lighter) was found on his person. The conditions of his confinement for this twenty-day period were not so extreme as to impose atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life.  Nor has Plaintiff shown that during this twenty-day period his placement was

---

[15]Defendant Lehew states that Plaintiff has made no allegation of wrongdoing against him and specifically relies on the fact that Plaintiff's claims in no way involve a challenge to the search of Plaintiff's cell.  Plaintiff does, however, challenge his placement in administrative segregation without due process and Defendant Lehew was the Administrator at the time of Plaintiff's initial placement.

indeterminate and the duration of his confinement affected.   Therefore, Plaintiff cannot establish a liberty interest sufficient to invoke his right to procedural due process and his claim in Count I as against Defendant Lehew fails as a matter of law.[16]

As to the claim raised in Count II challenging the conditions of Plaintiff's confinement, accepting Plaintiff's allegations as true, Plaintiff has failed to demonstrate that any harm suffered during the twenty-day period was sufficiently serious to rise to the level of a constitutional violation.   *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (noting that when considering conditions of confinement, "the length of exposure to the conditions is often of prime importance" and that "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation") *see also Craig v. Eberly*, *supra*, 164 F.3d at 495 ("Th[e] [Eighth Amendment] inquiry turns not only on the severity of the alleged deprivations, but also on their duration.") (citation omitted).   Nor has Plaintiff alleged any facts to demonstrate Defendant Lehew acted with a sufficiently culpable state of mind, that is, that Defendant Lehew knew of and disregarded an excessive risk to Plaintiff's health or safety.

---

[16]As set forth above, to the extent Defendant Lehew failed to follow applicable CCDC procedures governing disciplinary matters, the procedures themselves do not give rise to a protected liberty interest.  Only if the conditions of confinement impose atypical and significant hardship in relation to the ordinary incidents of prison life does the language of the regulations become relevant.

In sum, Plaintiff has not alleged facts sufficient to demonstrate Defendant Lehew has violated Plaintiff's federal constitutional rights, and Defendant Lehew is entitled to entry of summary judgment on grounds of qualified immunity.[17]

## RECOMMENDATION

For the reasons set forth above, it is recommended that Defendant Ben Lehew's Motion for Summary Judgment [Doc. ##123-124] be granted on grounds of qualified immunity and that judgment be entered in Defendant Lehew's favor.   It is further recommended that Plaintiff's official capacity claims against Defendants Cagle, Briley, Hobbs, Moon, Bowles and Keller be dismissed for failure to state a claim upon which relief can be granted.  Finally, it is recommended that the following motions for summary judgment be denied as to the claims asserted against the CCDC Defendants in their individual capacities: (1)  Defendant Dale Cagle's Motion for Summary Judgment [Doc. ##126, 131]; (2)  Motion for Summary Judgment of Defendants Shawn Briley, William Hobbs and Andy Moon [Doc. ##127, 130] and (3) Motion for Summary Judgment of Defendants Shelly Bowles and Dennis Keller [Doc. ##128, 129].

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of this

---

[17]Because the Court finds Defendant Lehew is entitled to qualified immunity, it is not necessary to address the additonal bases upon which Defendant Lehew has moved for summary judgment.

Court by January __5th__, 2009.  *See* Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## <u>STATUS OF REFERRAL</u>

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

ENTERED this __12th__ day of December, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE